Danny THOMAS, Plaintiff–Appellant,

v.

Dennis DOUGLAS, Defendant,

and

Clarence Dupnik, Pima County, Arizona, Defendants–Appellees.

No. 88–1508.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 17, 1989.

Decided June 22, 1989.

Michael J. Bloom, P.C., Tucson, Ariz., for plaintiff-appellant.

Carl A. Piccarreta and Davis, Gugino & Piccarreta, P.C., Tucson, Ariz., for defendants-appellees.

Before HUG, HALL and O'SCANNLAIN, Circuit Judges.

CYNTHIA HOLCOMB HALL, Circuit Judge:

Danny Thomas timely appeals from a grant of summary judgment in favor of his employer, Pima County, and a county employee, Sheriff Charles Dupnik. Thomas contends that the district court erred in awarding summary judgment because genuine issues of material fact exist as to whether appellees' refusal to transfer him, and his continued placement at the Pima County Sheriff's Department substation in Ajo, Arizona, constituted: (1) a violation of his first amendment right of freedom of expression under 42 U.S.C. § 1983, (2) wrongful constructive discharge and (3) intentional infliction of emotional distress.

I

Danny Thomas was employed by the Pima County Sheriff's Department ("the Department") from 1973 through June 1983, when he resigned for reasons unrelated to this action. Thomas was rehired by the Department in January 1984 and was temporarily assigned to the Ajo substation until a replacement deputy was hired and trained through the Department's Academy. A replacement was hired on February 12, 1984, but left on February 20 because he did not complete the academy. In April, 1984, two new Deputy Sheriff candidates were hired and began their training at the academy. Thomas learned prior to his resignation on April 30, 1984, that these two candidates would replace him at Ajo as soon as they graduated. On July 8, 1984, the candidates were assigned to Ajo.

During Thomas's tenure at Ajo, he became aware of possible violations of Departmental rules and state criminal laws involving Deputy Sheets and two of Thomas's supervisors, Ajo District Commander Lieutenant Garchow and Sergeant Gilmartin. Thomas reported this information to the Internal Affairs office. An investigation was authorized by appellee Dupnik, and Detective Newburn was placed in charge.

Beginning on March 19, 1984, Garchow and Sheets were placed on administrative leave, which was not lifted until the conclusion of the investigation in early May, but Gilmartin was not relieved of his duties. Also during the investigation, Thomas requested through Internal Affairs that he be transferred out of Ajo to ensure his personal safety because he feared possible retaliation from the officers against whom he had made allegations of wrongdoing.

In late April 1984, Internal Affairs sustained Thomas's allegations but informed him that Sheets, Gilmartin and Garchow were not to be fired.[1] On April 30, 1984, Thomas informed Gilmartin that he would be resigning effective May 14, 1984. Approximately one week after Thomas tendered his resignation, Dupnik traveled to Ajo to personally inform Sheets, Gilmartin and Garchow of the disciplinary action to be taken against them, but discovered upon his arrival that the news of the intended punishments had already reached the officers. At that point, Dupnik instructed Major Douglas to find the source of the leaks.

Under orders from Douglas, Sergeant Gordon questioned both Thomas and another deputy, Czech, who also had provided Internal Affairs with information that led to the disciplinary action. When Thomas refused to divulge his source, Gordon suspended him; later that night, however, Douglas rescinded the suspension and authorized Thomas's transfer to Tucson for the remainder of his time with the Department.

Thomas brought suit against appellees Pima County and Sheriff Dupnik, as well as officers Douglas, Garchow and Sheets, alleging a violation of his civil rights under 42 U.S.C. § 1983, wrongful constructive discharge, and intentional infliction of emotional distress. After exhaustive discovery, all defendants filed a Motion for Summary Judgment, which Thomas opposed. The parties subsequently filed a Stipulated Statement of Facts pursuant to a district court order.

The district court initially granted summary judgment only as to Garchow, Sheets, and Douglas. After additional briefing, the district court granted summary judgment for appellees Pima County and Sheriff Dupnik. Thomas appeals from the summary judgment in favor of Pima County and Dupnik.[2]

## II

This court reviews de novo the district court's grant of a motion for summary judgment. *Allen v. Scribner*, 812 F.2d 426, 430 (9th Cir.), *modified in part* 828 F.2d 1445 (9th Cir.1987). The plain language of Rule 56(c)[3] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106

---

**1.** Garchow was given five additional days off without pay, a letter in his personnel file and a transfer for one year to Tucson. Gilmartin was given three days off without pay and a letter in his personnel file. Sheets was ordered to repay the excess pay he received ($1,540.30), a letter was placed in his personnel file and he was permanently transferred to Tucson.

**2.** Appellees' motion to amend the caption was denied by this court's motions panel. Consequently, Douglas is identified solely as a defendant in the caption; he is not a party to this appeal.

**3.** Rule 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986).

The questions of state law in this case are also reviewable de novo. *In re McLinn*, 739 F.2d 1395, 1397 (9th Cir.1984) (en banc).

### III

The district court granted the appellees' motion for summary judgment largely on the basis of uncontroverted facts. Thomas contends, however, that on his first amendment claim, genuine issues of material fact exist as to whether appellees' refusal to transfer him and his continued placement at Ajo, in the midst of "imminent danger", was a form of punishment or retaliation for his report to Internal Affairs of possible improprieties at Ajo.

### A

We must first determine whether Dupnik's refusal to transfer Thomas out of Ajo was a product of the exercise by Thomas of his protected first amendment rights.[4] In *Mt. Healthy City Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50

L.Ed.2d 471 (1977), the Supreme Court held it is the public employee's burden to show that his constitutionally protected expression was a "substantial" or "motivating" factor in his employer's adverse decision or conduct. *See also Allen*, 812 F.2d at 433. Once the employee satisfies his burden, the employer must show by a preponderance of the evidence that it would have reached the same decision or that it would have engaged in the same conduct even in the absence of the protected expression. *Mt. Healthy*, 429 U.S. at 285–87, 97 S.Ct. at 575–76 ("The constitutional principle at stake is sufficiently vindicated if such an employee is placed in no worse a position than if he had not engaged in the conduct."); *Allen*, 812 F.2d at 433.

In applying the *Mt. Healthy* rule of causation, the district court correctly determined that Thomas's exercise of his first amendment rights was not a "substantial" or "motivating" factor in appellees' conduct. It is undisputed that Thomas's assignment at Ajo would have continued until July 8, 1984, regardless of any information Thomas provided to Internal Affairs. The duration of Thomas's stay at Ajo was already decided at the time of his hire. He understood his assignment was to continue until a replacement for him was found. He was kept abreast at all times of the recruitment, employment and training situation for new recruits.

Regardless of any previous agreement between Thomas and the appellees, however, if Thomas could have shown that because of his protected expression he was placed in "imminent danger" that appellees had a duty to avert, *see* Restatement (Sec-

---

4. Whether Thomas's speech activities were constitutionally protected is not an issue before this court, but is part of the two-step test for causation under *Mt. Healthy City Bd. of Educ. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1986). Normally, in evaluating the first amendment rights of a public employee, the threshold inquiry is whether the speech at issue addresses a "matter of public concern." *Allen*, 812 F.2d at 430; *see also Connick v. Myers*, 461 U.S. 138, 142, 103 S.Ct. 1684, 1687, 75 L.Ed.2d 708 (1983) (citing *Pickering v. Board of Educ.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed. 2d 811 (1968)).

As in *McKinley v. City of Eloy*, 705 F.2d 1110 (9th Cir.1983), Thomas's speech related to the "competency of the police force," *Id.* at 1114, as well as to " 'efficient performance of [police] duties,' " *id.* (quoting *Connick*, 461 U.S. at 148, 103 S.Ct. at 1691). Indeed, under the *Pickering* test, 391 U.S. at 568, 88 S.Ct. at 1734, Thomas's speech may rest firmly on the "highest rung of the hierarchy of first amendment values" because it "[brought] to light a breach of public trust on the part of [public officials]." *Allen*, 812 F.2d at 431 (quoting *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 913, 102 S.Ct. 3409, 3425, 73 L.Ed.2d 1215 (1982); and *Connick*, 461 U.S. at 148, 103 S.Ct. at 1690).

ond) of Agency § 512 (1958)[5], the issue would have arisen whether the "imminent danger" was the product of an improper motive entertained by the appellees. Our threshold inquiry is, therefore, whether Thomas was ever placed in "imminent danger".

The undisputed facts reveal that there was no realistic or objective basis for a belief that Thomas's continued presence in Ajo placed him in "imminent danger," or that any danger was known to appellees. Thomas was not subjected to any change or demotion in duties or reassignment to "bad shifts". He was not otherwise compelled to do "dirtier jobs" within the patrol area. On several occasions, Thomas did find himself the only officer patrolling the streets after 3:00 a.m., and he feared a backup would not be available. Czech, a friend of Thomas's who also provided information to Internal Affairs, also wondered when she worked midnights if backups would be available for her. However, there was never an instance in which backups were not available. Also, there usually was an additional officer patrolling with Thomas, which was the normal procedure at Ajo.

It is true that during the investigation, rumors circulated throughout the Department as to the identity of the whistle blower. These rumors focused, however, not only on Thomas, but on Deputies Lee and Czech as well. There was also some speculation that Tucson-based deputies who had spent time in Ajo during a recent copper strike may have been the source. Even though Deputy McKinley congratulated Thomas for bringing the matter to the attention of Internal Affairs and told Thomas it was common knowledge that he was the whistle blower, no one else approached Thomas with this information. Also, it does not appear from the record that Gilmartin, Garchow and Sheets took any ac-

tion to retaliate, threaten, stigmatize, or otherwise cause injury to Thomas or his career.

Because the investigation was a major topic of conversation, factions did develop within the substation either supporting or opposing the investigation. It was during this time that Czech told Thomas she overheard an Ajo corrections officer indicate he wished he knew who had gone to Internal Affairs because "his ass is grass." However, this remark was not made directly to Thomas and Thomas never reported the remark to Internal Affairs. Internal Affairs did subsequently hear about the remark, but it was understood by Newburn and Internal Affairs not to have been a serious threat.

Because of Thomas's subjective uncomfortableness at Ajo, he requested on several occasions that appellee Dupnik transfer him to Tucson. Dupnik indicated that he would approve a transfer if Thomas could provide him or Internal Affairs with an objective basis for his fears. Thomas never provided Dupnik or Newburn with any specific reasons or basis for his fear.

■ Certainly, tension surrounded Thomas's disclosures to Internal Affairs; resentment and ill will commonly arise in the whistle-blowing context. Thomas's discomfort, however, was as likely the product of human nature as of anything appellees did or failed to do. *See Egger v. Phillips*, 710 F.2d 292, 322–23 (7th Cir.) (en banc), *cert. denied*, 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983). The first amendment neither guarantees that a whistle-blower can engage in a cost-free exercise of his right of free expression, nor requires appellees to guarantee good feelings at all times between employees. *See id.* ("[T]he First Amendment does not guarantee the employee a cost-free exercise of [the] right [to make good faith accusations of malfeasance against fellow workers]. One cost of

---

**5.** The Restatement (Second) of Agency § 512 (1958) states:

  If a servant, while acting within the scope of his employment, comes into a position of imminent danger of serious harm and this is known to the master or to a person who has duties of management, the master is subject to

liability for a failure by himself or by such person to exercise reasonable care to avert the threatened harm.

See *Ragsdell v. Southern Pacific Transp. Co.*, 688 F.2d 1281, 1283 (9th Cir.1982); *Ford v. Revlon, Inc.*, 153 Ariz. 38, 734 P.2d 580, 586 (1987).

the exercise of that right ... is not imposed by the employer, but by human nature.").

We are somewhat disturbed by the fact that Departmental policy obligated Thomas to report evidence of misconduct of his superiors and co-workers, yet the relief he requested after making his report was not granted. The Department, or perhaps the Arizona legislature, should offer more protection to persons who are courageous enough to blow the whistle on unlawful or unethical practices. Nevertheless, on the facts of this case, we cannot grant Thomas the federal remedies he seeks because he has failed to establish that he was placed in any "imminent danger," and there is no evidence to indicate that he was discriminated against or otherwise punished as a result of having engaged in constitutionally protected expression.

### B

Thomas also contends, however, that summary judgment was inappropriate because this case involves "mixed motivations" on the part of appellees. Thomas relies on Ninth Circuit "mixed motive" cases which stand for the proposition that the motivation issue should be reserved to the trier of fact. *See, e.g., Peacock v. Duval,* 694 F.2d 644, 646 (9th Cir.1982).[6] However, simply labeling this a "mixed motivation" case does not make summary judgment inappropriate. Summary judgment usually is inappropriate only when "questions of motive *predominate* in the inquiry about how big a role the protected behavior played in" the employment deci-

sion. *Mabey v. Reagan,* 537 F.2d 1036, 1045 (9th Cir.1976) (emphasis added). This is not such a case.

Thomas asserts that "mixed motivation" is evidenced by the alternative explanations offered by his employees regarding his treatment. Specifically, Thomas asserts that Dupnik refused to transfer him for fear of identifying him as the whistle blower, whereas Douglas believed appellant's identity as the whistle blower was common knowledge. Thomas concludes that this demonstrates an improper motive.

■ Thomas misapprehends the "mixed motivation" case law. He must do more than present conflicting evidence regarding his employers' motives. He must demonstrate that the appellees' actions were motivated by both an impermissible (unconstitutional) and a permissible motive. This he has not done.[7] Therefore, even though summary judgment is frequently inappropriate in cases dealing with potentially unconstitutional motivations, summary judgment was appropriate in the instant case because Thomas has simply failed to demonstrate that appellees acted pursuant to any unconstitutional motivation. *See Fonda v. Gray,* 707 F.2d 435, 438 (9th Cir. 1983).

### C

■ Appellees are entitled to judgment as a matter of law on Thomas's section 1983 claim. Based on the *Mt. Healthy* reasoning, no genuine issues of material fact exist because Thomas has failed to

---

**6.** All of the cases Thomas cites are readily distinguishable from the instant case. Unlike *Peacock,* 694 F.2d at 646, this appeal does not involve any complicated questions of motive and intent because no improper motive has been shown here. Similarly, the record in *Allen* clearly showed that defendants had made comments concerning plaintiff's statements to the media and that those statements were the reason for having plaintiff transferred. 812 F.2d at 434–35. *See also Tovar v. Billmeyer,* 721 F.2d 1260, 1264 (9th Cir.1983), *cert. denied,* 469 U.S. 872, 105 S.Ct. 223, 83 L.Ed.2d 152 (1984) (facts provided supported belief that the ordinance was enacted to suppress protected first amendment expression); *McKinley,* 705 F.2d at 1115 (protected speech was a factor in the adverse

employment decision); *Mabey v. Reagan,* 537 F.2d 1036, 1045 (9th Cir.1976) (one of the stated reasons for dismissal was arguably eligible for first amendment protection).

**7.** It appears, at most, that the decision to retain Thomas at Ajo was a matter of unfortunate judgment on the part of Dupnik because it would not have required much of an accommodation for the Department to transfer Thomas to Tucson. Nevertheless, on the facts of this case, there is insufficient evidence that Dupnik or other County agents subjected Thomas to any "imminent danger" or in any other respect acted out of impermissible motives.

make a showing sufficient to establish a required element of his first amendment claim—that his protected activity was a "substantial" or "motivating" factor in appellees' adverse decision or conduct. Thomas has also failed to establish that appellees knowingly subjected him to any "imminent danger," or that they acted out of "mixed motivations." Because Thomas has not presented sufficient evidence from which a reasonable jury could return a verdict in his favor, there is no need to have a trial on the merits.[8]

## IV

■ Thomas next contends that genuine issues of material fact exist as to whether, as a direct result of his whistle-blowing activities, he was subjected to "intolerable" working conditions constituting wrongful constructive discharge. This is a state law claim arising out of the same facts alleged to support his first amendment claim.

We have held that constructive discharge occurs when, "looking at the totality of the circumstances, 'a reasonable person in [the employee's] position would have felt that he was forced to quit because of intolerable and discriminatory working conditions.' " *Watson v. Nationwide Ins. Co.,* 823 F.2d 360, 361 (9th Cir.1987) (brackets in original) (quoting *Satterwhite v. Smith,* 744 F.2d 1380, 1381 (9th Cir.1984)); *Nolan v. Cleland,* 686 F.2d 806, 812 (9th Cir.1982). The Arizona courts have adopted a similar, if not identical, objective standard under which "constructive discharge exists when 'working conditions were so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.' " *Civil Rights Division v. Vernick Plumbing & Heating Co., Inc.,* 132 Ariz. 84, 643 P.2d 1054, 1055 (Ct.App. 1982); *see also Nolan,* 686 F.2d at 813.

The determination whether conditions were so intolerable and discriminatory as to justify a reasonable employee's decision to resign is normally a factual question left to the trier of fact. *Watson,* 823 F.2d at 361; *and see Lojek v. Thomas,* 716 F.2d 675, 680 (9th Cir.1983). However, to establish that he was constructively discharged, a plaintiff must at least show some " 'aggravating factors,' *such as* a 'continuous pattern of discriminatory treatment.' " *See Watson,* 823 F.2d at 361 (emphasis added in *Watson* ) (quoting *Satterwhite,* 744 F.2d at 1382).

There is insufficient evidence in this case of any aggravating factors or differential, discriminatory or retaliatory treatment by appellees from which a rational trier of fact could conclude that Thomas's working conditions were so "difficult or unpleasant" or "intolerable" that a reasonable person would have been compelled to quit. Thomas was not required to perform any unusually dangerous or onerous duties, and he was not subjected to any harassment or violent acts or any other treatment which could be considered punishment or retaliation. He was not disciplined or ordered to remain in Ajo for a period longer than that to which he had agreed originally. It was not unreasonable for Thomas to feel uncomfortable in his situation. His subjective personal discomfort, however, was most likely not the product of any action by appellees but, rather, the product of human nature. *See Egger,* 710 F.2d at 322–23.

Because Thomas has failed to establish at least one of the required elements for this claim, i.e., that he was "constructively discharged," appellees are entitled to judgment on the wrongful constructive discharge claim as a matter of law.

## V

■ Thomas finally contends that genuine issues of material fact exist as to whether, as a direct result of his whistle-blowing activities, appellees' conduct became so "extreme" and "outrageous" as to

---

**8.** We deny appellees' request for attorney's fees pursuant to 42 U.S.C. § 1988 because Thomas's suit was not frivolous, unreasonable, vexatious, or meritless in the sense that it was groundless or without foundation, or brought to harass or embarrass appellees. *See Hensley v. Eckerhart,* 461 U.S. 424, 429 n. 2, 435 n. 10, 103 S.Ct. 1933, 1937 n. 2, 1940 n. 10, 76 L.Ed.2d 40 (1983); *Hughes v. Rowe,* 449 U.S. 5, 14–15, 101 S.Ct. 173, 178–79, 66 L.Ed.2d 163 (1980); *Benigni v. City of Hemet,* 868 F.2d 307, 314 (9th Cir.1989).

intentionally or recklessly cause him severe emotional distress. This state law claim also involves the same facts as did his first amendment claim.

In *Ford v. Revlon, Inc.*, 153 Ariz. 38, 43, 734 P.2d 580, 585 (1987), the Arizona Supreme Court stated the three elements a plaintiff must prove to establish this claim: (1) the conduct of the defendant must be "extreme" and "outrageous"; (2) the defendant must either intend to cause emotional distress or recklessly disregard the near certainty that such distress will result from his conduct; and (3) severe emotional distress must indeed occur as a result of defendant's conduct. Thomas has utterly failed to establish any of these required elements.

First, appellees' conduct cannot be characterized as so extreme or outrageous as to "go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Restatement (Second) of Torts § 46 comment d (1965); *Ford*, at 43, 734 P.2d at 585. There is no evidence that appellees acted to punish or retaliate against Thomas. The "ass is grass" comment is the only evidence of harassment that Thomas has presented. However, liability for intentional infliction of emotional distress "does not extend to mere threats" because "some safety valve must be left through which irascible tempers may blow off relatively harmless steam." Restatement, *supra*, at § 46 comment d; *and see Ford*, at 43, 734 P.2d at 585. Also, the fact that the appellees' conduct was sufficient to make Thomas personally uncomfortable at Ajo in no way establishes that it was sufficiently outrageous and extreme to satisfy the first *Ford* requirement. *Ford*, at 43, 734 P.2d at 585.

Second, Thomas's proof does not establish that appellees intended to cause him any emotional distress or recklessly disregarded the near certainty that such emo-

tional distress would in fact occur. There is no evidence that appellees acted with improper motive, or intentionally or knowingly subjected Thomas to any "imminent danger". Finally, Thomas has failed to establish that severe emotional distress actually occurred because no evidence, medical or otherwise, was ever presented to prove the element of severity.

Because none of the required elements for this claim was established, appellees are also entitled to judgment on the intentional infliction of emotional distress claim as a matter of law.[9]

AFFIRMED.

---

**9.** We deny appellees' "Motion to Strike Portions of Filed Excerpts of Record". Because we are reviewing de novo the summary judgment, we may consider all the materials presented by the parties on which the district court based its decision, including the Statements of Facts filed by both parties. *See* Fed.R.Civ.P. 56(c). The inclusion of the plaintiff's original statements of facts, moreover, is not prohibited or sanctionable under court rules. *See* Ninth Circuit Rules 30–1.3 and 30–2.