880 P.2d 1165

Camest L. WEST, Plaintiff–Appellant, Cross Appellee,

v.

The SALT RIVER AGRICULTURAL IMPROVEMENT AND POWER DISTRICT, a municipal corporation, Defendant–Appellee, Cross Appellant.

No. 1 CA–CV 92–0272.

Court of Appeals of Arizona, Division 1, Department A.

Sept. 8, 1994.

Francis G. Fanning, Mesa, for plaintiff-appellant.

Jennings, Strouss & Salmon, P.L.C. by J. Matthew Powell, Gerald W. Alston, Phoenix, for defendant-appellee.

## OPINION

GERBER, Acting Presiding Judge.

Appellant Camest West (West) sued his former employer, appellee Salt River Agricultural Improvement and Power District (SRP), alleging that SRP discriminated against him on the basis of his age by causing him to retire before he was required to do so. West appeals from the trial court's grant of summary judgment in favor of SRP. We conclude that as a matter of law West failed to show that he was constructively discharged and thus did not establish a *prima facie* case of age discrimination. Therefore, we affirm the trial court.

SRP cross-appeals from the trial court's denial of its application for an award of attorneys' fees. Because the trial court acted within its discretion, we affirm the trial court in the cross-appeal.

## FACTS AND PROCEDURAL HISTORY

West worked for SRP for more than twenty-four years. At the time of his retirement from SRP, he was the internal audit manager, an executive position, and reported directly to the SRP president.

West's sixty-fifth birthday was on December 5, 1989. In June 1988, he talked to his human resources representative, Nacho Orozco, about his retirement benefits. West believed that he would have to work for about twenty-four months past his sixty-fifth birthday to have a retirement income that would meet his projected budget. However, he asked Orozco whether he could work for only three months after he turned sixty-five.

Orozco told West that he thought West might not be able to work beyond his sixty-fifth birthday due to SRP's mandatory executive retirement policy, HR 515. Policy HR 515 provided that an employee was required to retire by the end of the month in which the employee's sixty-fifth birthday occurred if:

A. For the two-year period immediately preceding retirement, the employee is a bona fide executive *or* high policymaker; and,

B. The employee is entitled upon retirement to an immediate nonforfeitable annual retirement benefit from a pension, profit sharing, savings, or deferred compensation plan, or any combination of any such plans of the Project, which equals, in the aggregate, at least $44,000.

Orozco gave West a copy of HR 515. West admitted that he did not notice the "and" between paragraphs A and B and thus thought that if he was a bona fide executive or high policymaker, HR 515 applied to him regardless of the amount of his retirement benefits.

A few weeks after their first meeting, Orozco told West that he did not believe HR 515 applied to West. However, he also told West that Dick Williams, who administered executive compensation plans, and Williams's supervisor, Nollie Carlier, had said that West could not work for three months beyond his

sixty-fifth birthday. Jane Alfano, the head of SRP's legal department, told West that she did not believe HR 515 applied to him because she did not think he was an executive or high policymaker. West disagreed with Alfano, but he did not tell her so.

In June 1989, West received a letter from the SRP Retirement Committee. The letter outlined estimated monthly pensions payable to him under various alternatives, assuming that he retired on December 31, 1989. The highest monthly benefit available to him was $2,265.87, which is $27,190.44 per year. The letter opened with the statement, "The Retirement Committee is required to advise you that you are eligible for normal retirement the month following your 65th birthday." However, he misread the letter and thought it meant that he was required to retire on December 31, 1989.

Also in June 1989, West again visited with Orozco, at Orozco's request, regarding West's retirement. Orozco told West that as far as he knew, West would be able to extend his employment by three months if he so desired. West did not recall any other conversations with Orozco about his retirement after June 1989. Orozco, however, believed he talked to West in October 1989 and may have suggested to West that he would have to retire at age sixty-five.

In October 1989, Alfano concluded that West was a bona fide executive under HR 515, paragraph A. Dick Williams was asked to determine whether paragraph B of HR 515 applied to West. He concluded that West's pension would be less than $44,000 a year. Thus, HR 515 did not apply to West, and he was not required to retire at age sixty-five. West did not know that SRP officials were trying to determine whether HR 515 applied to him, and they did not advise him of their conclusion that HR 515 did not require his retirement.

Because West felt he had not received a definitive response as to whether he could continue to work after he reached age sixty-five, he talked to John Lassen, SRP's president and his supervisor. West told Lassen that he had checked with Orozco and the human resources and law departments and they had said it would probably be all right if

he worked three months beyond December. West asked if that arrangement was acceptable, and Lassen said it was fine with him.

In February or March 1990, West asked Lassen if he could extend his retirement date to June 30, 1990 to take advantage of a gain-sharing plan that would be available to him if he worked until that date. Although West felt that Lassen's demeanor indicated that he was not happy with the request, Lassen said that West could extend his retirement date to June 30.

In late March, Lassen asked West to put his June 30 retirement date in writing. At that time, official notification of retirement was to be submitted six months prior to retirement. On April 2, 1990, West submitted a memorandum to Lassen that confirmed June 30, 1990 as his retirement date, expressed his feeling that SRP had been the best company he had worked for "because of its concern for employees," and thanked SRP executive management for its understanding and strong support of his efforts. West also submitted a completed retirement form that contained the provision that he could not postpone retirement beyond June 30, 1990, except with the approval of his management and the employee relations manager.

West has acknowledged that he never asked Lassen if HR 515 applied to him or if he could work for more than three or six months past his sixty-fifth birthday. Lassen never told West that he had to retire on a particular date and never discussed West's retirement with him until West raised the issue. West did not tell Lassen that he did not want to retire or that he thought he had to retire. West never asked Lassen if he could leave his retirement date open or extend it past June 30. West has also acknowledged that no one at SRP ever told him either orally or in writing that he had to retire at age sixty-five. However, he felt that the general atmosphere at SRP created pressure on him to retire at age sixty-five, so he tried to avoid bringing attention to the issue of his retirement.

West retired on June 30, 1990. The day after he retired, his department was reorganized in accordance with a reorganization

process initiated before he retired. He believed that if he had been employed on July 1, he would have been eligible for a severance package. In November 1990, SRP also offered a severance package to any employee who was over fifty-five and had sufficient service to be entitled to benefits.

In May 1991, West filed a complaint against SRP. He alleged that SRP led him to reasonably believe that he was required to retire on or about his sixty-fifth birthday pursuant to SRP's policy. He also alleged that SRP demanded his commitment to retire by June 30, 1990, in order to deprive him of severance benefits he would have been entitled to had he been employed on July 1, 1990. He asserted that he was not covered by SRP's mandatory retirement policy and that to the extent SRP interpreted the policy to include him, the policy was in violation of provisions of the Arizona Civil Rights Act, Ariz.Rev.Stat.Ann. (A.R.S.) section 41-1463, and the Federal Age Discrimination in Employment Act (ADEA), 29 U.S.C. sections 623 and 631. He sought an award of back pay and benefits including severance pay and enhancement of retirement benefits. He also alleged that by denying him severance benefits, SRP breached a contract with him.

SRP moved for summary judgment, arguing that it was entitled to judgment because evidence from West's deposition established that he voluntarily retired after he misread the executive retirement policy and thought it applied to him. SRP pointed out that he acknowledged that no SRP official told him he had to retire at age sixty-five.

In response, West argued that it was not incumbent on him to prove that anyone advised him that he must retire and that the confusion, innuendo and subtle pressures created by SRP's agents were enough to make out a claim of age discrimination. He also argued that the conditions at SRP were so intolerable that his retirement constituted a constructive discharge.

The trial court found that West had failed to come forward with any facts supporting his claim for age discrimination or breach of a severance agreement. It thus granted SRP's motion for summary judgment but declined to award attorneys' fees to SRP.

West timely appealed from the judgment in favor of SRP, and SRP cross-appealed from the denial of its application for attorneys' fees.

## DISCUSSION

### A. Summary Judgment

Because this is an appeal from summary judgment, this court views the evidence in the light most favorable to the party who opposed the motion. *World Investments, Inc. v. Harber's Estate,* 17 Ariz.App. 107, 109, 495 P.2d 877, 879 (1972). Summary judgment is properly granted "if the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense." *Orme School v. Reeves,* 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990).

### B. Appeal Issues

West argues on appeal that he need not prove that anyone at SRP directly advised him that he had to retire at age sixty-five. He maintains that the confusion, innuendo and subtle pressures that were created by SRP's agents through the use of HR 515 and their failure to advise him that HR 515 did not apply to him are enough to make out a claim of age discrimination.

He further argues that SRP's violation of the ADEA did not have to be willful and that he may prevail if he shows that SRP violated the ADEA through misrepresentation and manipulation. According to West, he established direct evidence that created an inference that an illegal motivation and a general prejudice against a particular age class influenced SRP's actions concerning him such that the burden was shifted to SRP to prove a legitimate basis for its actions. He also argues that the facts create a triable issue as to whether he was constructively discharged.

In response, SRP argues that the evidence shows that West voluntarily retired more than six months after his sixty-fifth birthday on a date that he chose. It asserts that because no one at SRP told him he had to retire, as a matter of law SRP did not violate

the ADEA. According to SRP, the record shows that it did not cause him to believe he was subject to HR 515 because it made no attempt to apply or enforce the policy as to him. It points out that the only two SRP employees (Orozco and Alfano) who made any representation to him regarding HR 515 told him that the policy did not apply to him. It further notes that his mistaken belief that HR 515 required him to retire resulted from his misreading of the policy and a letter he received from the retirement committee, not from any representation by an SRP employee.

■ The ADEA "broadly prohibits arbitrary discrimination in the workplace based on age." *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 120, 105 S.Ct. 613, 621, 83 L.Ed.2d 523 (1985), *quoting Lorillard v. Pons,* 434 U.S. 575, 577, 98 S.Ct. 866, 868, 55 L.Ed.2d 40 (1978). To establish a violation of the ADEA where an employee is discharged from employment, the plaintiff must ultimately prove by the preponderance of the evidence that age was a determining factor in the employer's discharge decision. *Clark v. Coats & Clark, Inc.,* 990 F.2d 1217, 1226 (11th Cir.1993).

■ Initially, the plaintiff has the burden of establishing a *prima facie* case of age discrimination. *Hebert v. Mohawk Rubber Co.,* 872 F.2d 1104, 1110 (1st Cir.1989). A *prima facie* case may be made by presenting direct evidence of discriminatory intent, or by satisfying all elements of the test established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), or by statistical proof of a pattern of discrimination. *Buckley v. Hospital Corp. of America,* 758 F.2d 1525, 1529 (11th Cir.1985).

■ West alleges that the facts of his situation provide direct evidence of discriminatory intent. According to the *Clark* court, "evidence of age discrimination is direct when, if believed, it establishes discriminatory intent without inference or presumption. Only the most blatant remarks whose intent could only be to discriminate on the basis of age constitute direct evidence." *Clark,* 990 F.2d at 1226 (citation omitted). Taking West's factual allegations as true, the evidence cannot establish discriminatory intent on the part of SRP without inference or presumption. West acknowledges that no one at SRP told him he had to retire at age sixty-five nor did anyone take any action to force him to retire by a certain date. He chose the date on which he would retire. Moreover, West presented no evidence that Lassen's request that he put his retirement date in writing was motivated by anything other than SRP's policy that notice of retirement be given months in advance of the retirement date.

■ Because West did not produce direct evidence of discriminatory intent, an alternative method of establishing a *prima facie* case must be used if he is to prevail. The method of showing a pattern of discrimination does not apply because no statistical evidence of age discrimination at SRP was produced. Under the *McDonnell Douglas* test method, West must show that he (1) was in the protected age group, (2) was qualified for the position held and was performing the position satisfactorily, (3) was discharged either actually or constructively, and (4) was replaced by someone [1] with equal or lesser qualifications. *See Hebert,* 872 F.2d at 1110, and *Cassino v. Reichhold Chemicals, Inc.,* 817 F.2d 1338, 1343 (9th Cir.1987).

At age sixty-five, West clearly was in the protected group. He was qualified for the position he held, and the implication from the record is that SRP thought he was doing a satisfactory job. SRP did not fire West. Therefore, the question becomes whether SRP forced him to retire and thus constructively discharged him.

---

1. The Circuit Courts also require the replacement to be "younger," *Guthrie v. J.C. Penney Co.,* 803 F.2d 202, 206–07 (5th Cir.1986), *Spulak v. K Mart Corp.,* 894 F.2d 1150, 1153 (10th Cir.1990); "substantially younger," *Cassino v. Reichhold Chemicals, Inc.,* 817 F.2d 1338, 1343 (9th Cir. 1987); or "outside the protected group," *Clark v.* *Coats & Clark, Inc.,* 990 F.2d 1217, 1226 (11th Cir.1993), *Burlew v. Eaton Corp.,* 869 F.2d 1063, 1066 (7th Cir.1989); *but compare* "need not be younger or outside protected group," *Hebert v. Mohawk Rubber Co.,* 872 F.2d 1104, 1110 (1st Cir.1989).

"To establish a prima facie case of age discrimination by constructive discharge, an employee must prove that his 'employer by its illegal discriminatory acts has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign.'" *Mitchell v. Mobil Oil Corp.*, 896 F.2d 463, 467 (10th Cir.1990). "The inquiry focuses on the employee's state of mind, and the employer's intent in creating the allegedly intolerable conditions is irrelevant at this stage." *Guthrie v. J.C. Penney Co.*, 803 F.2d 202, 207 (5th Cir.1986). Nevertheless, the test is objective because it turns on the reaction of a "reasonable employee" in the plaintiff's position rather than on the plaintiff's actual reaction. *Id.*

Determining whether conditions were so intolerable and discriminatory that a reasonable employee would have been justified in resigning or retiring is normally a question for the trier of fact. *Thomas v. Douglas*, 877 F.2d 1428, 1434 (9th Cir.1989). To establish constructive discharge, the plaintiff must show some aggravating factor such as a continuous pattern of discriminatory intent. *Id.* Absent such a showing, the court may find that as a matter of law the plaintiff was not constructively discharged. *See Id.* (insufficient evidence of any aggravating factors of differential, discriminatory or retaliatory treatment by employer from which trier of fact could conclude that a reasonable person would have been compelled to quit; appellees entitled to judgment on wrongful constructive discharge claim as matter of law).

In *Calhoun v. Acme Cleveland Corp.*, 798 F.2d 559 (1st Cir.1986), Calhoun contended that his employer entered into a course of action designed to force him into early retirement at age sixty-two. Calhoun's supervisor repeatedly asked him whether he intended to take early retirement, replaced Calhoun with a younger man and demoted Calhoun with no cut in pay, excluded Calhoun from training, and told Calhoun that if he continued on the job he would have to work twelve to fourteen hour days and Saturdays. *Id.* at 561–62. The court concluded that the events taken together compared favorably enough with fact patterns in successful age discrimination cases that summary judgment would be improper. *Id.* at 563. The *Calhoun* court cited the following cases as examples of conduct sufficient to establish constructive discharge: *Cockrell v. Boise Cascade Corp.*, 781 F.2d 173 (10th Cir.1986) (choice of transfer to lower paying job or resignation); *Williams v. Caterpillar Tractor Co.*, 770 F.2d 47 (6th Cir. 1985) (demotion without warning or reprimand); *Buckley v. Hospital Corp. of America*, 758 F.2d 1525 (11th Cir.1985) (several inquiries about retirement plans along with humiliating demotion, even with same pay and benefits).

The only occurrences that West cites on appeal as constituting facts supporting constructive discharge are that he was told that he might be required by HR 515 to retire at age sixty-five, he was not informed of this error when discovered by management, and his supervisor asked him to commit in writing to the retirement date he requested. These actions by SRP do not constitute intolerable and discriminatory working conditions necessary to establish constructive discharge. West may have been exceptionally sensitive to any suggestion that he might have to retire at age sixty-five. However, SRP did not alter his working conditions nor say or do anything to him that would have caused a reasonable person to feel that he was being forced to retire.

In addition, the facts in the record show that West did not give SRP any indication that he wished to work indefinitely past age sixty-five. He asked Orozco for only a three-month extension past age sixty-five when it appeared that the policy might apply to him. SRP did not send West any forms to fill out or in any other way indicate that it expected him to retire in December 1989. The record shows that the impression he gave SRP officials about his retirement was that he was excited about retiring; for instance, he had someone take a picture of him as he signed the notice of retirement. He did not do anything to put SRP on notice that he thought HR 515 applied to him such that SRP could be said to have constructively discharged him by failing to tell him that HR 515 definitely did not apply to him.

■ West argues that he should prevail because he demonstrated that although SRP may not have committed a willful, direct violation of the ADEA, it violated the act through misrepresentation and manipulation. Clearly, a violation of the ADEA need not be willful for an employee to prevail in an age discrimination case.[2] However, the employee still must be able to establish a *prima facie* case of discrimination. As West did not establish a *prima facie* case, the question of SRP's willfulness is irrelevant.

Given the factual allegations and evidence presented by West, there was no constructive discharge as a matter of law. Therefore, West cannot satisfy the *McDonnell Douglas* test nor any of the other possible methods of establishing a *prima facie* case. Accordingly, we affirm the trial court's grant of summary judgment in favor of SRP.

## C. Cross–Appeal

■ On cross-appeal, SRP argues that the trial court abused its discretion in denying its request for an award of attorneys' fees pursuant to A.R.S. sections 41–1481(J) and 12–341.01. The denial of attorneys' fees is within the discretion of the trial court, and this court will not overrule such a decision if it is reasonably supported by the record. *Johns v. Dept. of Economic Sec.*, 169 Ariz. 75, 81, 817 P.2d 20, 26 (App.1991).

■ A prevailing defendant in a civil rights action may be awarded fees pursuant to A.R.S. section 41–1481(J) only upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even if it was not brought in subjective bad faith. *Sees v. KTUC, Inc.*, 148 Ariz. 366, 369, 714 P.2d 859, 862 (App.1985). Thus, the fact that a defendant prevails on the merits does not in itself entitle the defendant to an award of fees. *Id.*

■ The trial court ruled that West's case was not frivolous, unreasonable or with-

out foundation. The trial court did not abuse its discretion in denying an award of fees on that basis. After the initial confusion about whether HR 515 applied to West, the fact that SRP officials determined that he was not subject to this policy but did not tell him provides at least an arguable basis for his allegation of age discrimination. Therefore, we affirm the denial of the fee request under section 41–1481(J).

■ SRP also argues that it was entitled to an award of fees under A.R.S. section 12–341.01 because one of West's claims was for breach of contract. The trial court has discretion to grant such an award. *Wheel Estate Corp. v. Webb*, 139 Ariz. 506, 508, 679 P.2d 529, 531 (App.1983). The contractual claim involved Lassen's alleged promise that he would recommend West for a severance package if he qualified for one, and it played a very minor part in the litigation below. We find that the trial court did not abuse its discretion in denying the request for a fee award.

## D. Attorneys' Fees on Appeal

SRP requests an award of its attorneys' fees incurred in this appeal pursuant to A.R.S. section 41–1481(J) and Rule 21(c), Arizona Rules of Civil Appellate Procedure. Because West did not pursue his breach of contract claim on appeal, SRP does not ask for fees under section 12–341.01. For the reasons that we affirm the trial court's denial of attorneys' fees, we deny SRP's request for an award of fees on appeal.

McGREGOR and CONTRERAS, JJ., concur.

---

2. The question of willfulness in age discrimination generally comes into play in two situations. One is on the issue of whether the two-year statute of limitations for nonwillful violations of the ADEA or the three-year statute of limitations for willful violations applies. *See McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 108 S.Ct. 1677,

100 L.Ed.2d 115 (1988). The other is to determine whether liquidated damages may be awarded; double back pay may be awarded as liquidated damages only if an employer acted willfully in violating the ADEA. *See, e.g., Thurston*, 469 U.S. at 126, 105 S.Ct. at 624; *Burlew*, 869 F.2d at 1064 & n. 2.