52 F.3d 334
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Stephanie Ann SCHOUWEILER, Plaintiff-Appellant,
v.
Don E. FINDLEY, personally and in his official capacity as
Director, UCLA Conference Center, Lake Arrowhead; Nancy
Noble; UCLA Alumni Association; University of California
at Los Angeles; UCLA Conference Center, Lake Arrowhead;
Bruin Woods, Defendants-Appellees.
 No. 93-56549.
 United States Court of Appeals, Ninth Circuit.
 Submitted April 4, 1995.*
Decided April 6, 1995.
 
 Before: NOONAN, O'SCANNLAIN, and LEAVY, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Stephanie Ann Schouweiler brought numerous discrimination-related claims under 42 U.S.C. Secs. 1981, 1983 and 1985(3) against Don Findley and Nancy Noble, her supervisors at work. The district court granted summary judgment for Findley and Noble. We affirm.
 
 
 3
 * Schouweiler, a white woman, worked as a supervisor in the housekeeping department at the University of California at Los Angeles Conference Center at Lake Arrowhead, California (the "Center") from February 29, 1988 until August 19, 1991. The Center is a public employer. Schouweiler's responsibilities at the Center included overseeing the cleaning of guest rooms and the training and supervision of a small cleaning staff. Don Findley, a white man, was the director of the Center, and Nancy Noble, a white woman, was the assistant director.
 
 
 4
 Findley and Noble encountered difficulties with Schouweiler's work-related behavior on more than one occasion. On May 29, 1990, Findley gave Schouweiler a written warning regarding several instances of insubordination to Findley and Noble in front of Schouweiler's subordinates on the cleaning staff. Schouweiler was informed of her right to appeal this written warning. Between October 1990 and December 1990, Noble documented numerous deficiencies in Schouweiler's performance. In December 1990, Schouweiler was given a job performance evaluation that consisted largely of "needs improvement" and "satisfactory" ratings.
 
 
 5
 At some point during her employment at the Center, Schouweiler joined the American Federation of State, County and Municipal Employees ("AFSCME"). AFSCME represents clerical and service employees in the public sector. However, under AFSCME's collective bargaining agreement with UCLA, supervisory employees such as Schouweiler are excluded from the bargaining unit for clerical and service employees. In addition, UCLA is required by state law to maintain a policy of neutrality towards union activity. Cal.Gov't. Code Secs. 3571(d), 3571.3. Accordingly, UCLA requires its supervisory employees to remain neutral with regard to their subordinates' union activities. Findley had instructed Schouweiler and other supervisors at the Center that they were to remain neutral with regard to union membership and participation. In July 1991, two of Schouweiler's subordinates informed Findley that Schouweiler had been encouraging union membership and that they had attended union meetings at Schouweiler's home. As a result, on August 2, 1991, Findley suspended Schouweiler from work for five days.
 
 
 6
 On August 19, 1991, Schouweiler was issued a warning letter from Noble stating that she had failed to improve in the areas noted in her December 1990 performance evaluation. On that same day, Schouweiler took a stress-related medical leave of absence that lasted for eight months. On April 6, 1992, a letter from Schouweiler's physician stated that she still could not return to work. As a result, Schouweiler was notified by letter that she would be "medically separated" from her employment at UCLA. Schouweiler was informed of her right to respond to the action orally or in writing.
 
 
 7
 Schouweiler subsequently brought numerous federal discrimination-related claims against Findley and Noble alleging racial and gender discrimination, constructive discharge, retaliatory discharge, and conspiracy. The district court granted summary judgment for Findley and Noble.[1] We review the district court's grant of summary judgment de novo. Jesinger v. Nevada Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir.1994).
 
 II
 
 8
 Schouweiler claims that she has been deprived of her rights on account of her race in violation of 42 U.S.C. Sec. 1981. However, Schouweiler has failed to allege the slightest evidence of race discrimination. Indeed, Schouweiler admitted that neither Findley nor Noble, nor any other employee at the Center, had ever made disparaging remarks regarding her race. Section 1981 does not protect against the deprivation of rights on account of gender. Runyon v. McCrary, 427 U.S. 160, 167 (1976). In any event, Schouweiler has failed to introduce any evidence suggesting that either Findley or Noble discriminated against her on account of her gender.
 
 III
 
 9
 Schouweiler next claims that she has been deprived of her constitutional rights by Findley and Noble in violation of 42 U.S.C. Sec. 1983. To state a claim under section 1983, Schouweiler must allege the violation of a federal right by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988). Noble and Findley, in their roles as directors of a public employer, are state actors.[2]
 
 
 10
 First, Schouweiler claims she had a property interest in her job which was deprived without due process. In the April 6, 1992 letter informing Schouweiler that she was to be medically separated from her job, Schouweiler was also informed that she had "the right to respond either orally or in writing within five (5) calendar days to this intent to medically separate." Thus, Schouweiler was given an opportunity to contest her medical separation before it became effective. However, she failed to avail herself of this process.
 
 
 11
 Schouweiler also claims that "her working conditions be[came] so intolerant [sic] that she simply could no longer take it." "Constructive discharge occurs when, looking at the totality of the circumstances, a reasonable person in [the employee's] position would have felt that [she] was forced to quit because of intolerable and discriminatory working conditions." Thomas v. Douglas, 877 F.2d 1428, 1434 (9th Cir.1989) (quotation omitted). Schouweiler has presented no evidence of intolerable conditions at the Center. The disciplinary actions taken against Schouweiler do not demonstrate discriminatory working conditions; rather, they demonstrate that Schouweiler was not performing her job adequately, and that she had violated UCLA policy by encouraging union activity.[3]
 
 
 12
 Second, Schouweiler claims she was deprived of her First Amendment rights of free speech and association because she was discharged as a result of her union activities. A public employee has the burden of showing that her constitutionally-protected expression was a "substantial" or "motivating" factor in her employer's adverse decision or conduct. Mt. Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977); Thomas, 877 F.2d at 1431. Schouweiler has presented no evidence that her "medical separation" was related to her union activities. Indeed, she has presented no evidence that it was related to anything other than the letter submitted by her own doctor.
 
 
 13
 Regardless, Schouweiler's speech encouraging her subordinates to join AFSCME does not appear to have "substantially involved matters of public concern." McKinley v. City of Eloy, 705 F.2d 1110, 1114 (9th Cir.1983). Her speech and association regarding her own union activities is of even less public concern. When a public employee's speech does not touch on a matter of public concern, "government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment." Connick v. Myers, 461 U.S. 138, 147 (1983). Findley's decision to suspend Schouweiler for five days as a result of her breaking UCLA's neutrality policy is precisely the type of decision that is left to internal management when matters of public concern are not implicated.
 
 IV
 
 14
 In sum, Schouweiler has simply not pointed to any evidence indicating that her federally-protected rights have been violated as a result of race or gender discrimination or otherwise.[4] For the above reasons, the district court's grant of summary judgment is
 
 
 15
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument. Fed.R.App.P. 34(a), Ninth Circuit R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit R. 36-3
 
 
 [1]
 Schouweiler also named the UCLA Alumni Association and the Bruin Woods Resort as defendants. Schouweiler has pointed to no errors in the district court's decision to dismiss these parties on the ground that they were immune from suit under the Eleventh Amendment. In any event, they had not been served with process
 
 
 [2]
 Because we find Schouweiler's Sec. 1983 claims to be without merit, we need not consider whether Findley and Noble would be entitled to qualified immunity in their roles as public officials
 
 
 [3]
 As Schouweiler failed to present any evidence of race or gender discrimination under Sec. 1981, she has likewise failed to show that her equal protection rights have been violated under Sec. 1983
 
 
 [4]
 Because Schouweiler's Sec. 1981 and Sec. 1983 claims are meritless, her conspiracy claims under Sec. 1985(3) must fail as well