IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

ALICIA PETERSON, et al.,
*Plaintiffs/Appellees*,

*v.*

CITY OF SURPRISE, a political subdivision of the State of Arizona[1],
*Defendant/Appellant.*

No. 1 CA-CV 16-0415
FILED 2-6-2018

Appeal from the Superior Court in Maricopa County
No.  CV2011-055776
The Honorable John R. Hannah, Jr. Judge

**REVERSED**

COUNSEL

Manolio & Firestone, PLC, Scottsdale
By Veronica L. Manolio
*Counsel for Plaintiffs/Appellees*

Pierce, Coleman, PLLC, Phoenix
By Justin S. Pierce, Kylie Crawford TenBrook
*Counsel for Defendant/Appellant*

---

[1]     On the court's own motion, it is ordered amending the caption in this appeal as reflected in this decision.  The above-referenced caption shall be used on all further documents filed in this appeal.

**OPINION**

Presiding Judge Diane M. Johnsen delivered the opinion of the Court, in which Judge Michael J. Brown and Judge Jennifer B. Campbell joined.

**J O H N S E N**, Judge:

¶1          A jury awarded damages to a former police detective who alleged the City of Surprise constructively discharged her in retaliation for reporting repeated instances of sexual harassment.  We hold that an employee who fails to exhaust administrative remedies for an alleged constructive discharge based on sex discrimination may not sue for retaliation under the Employment Protection Act ("EPA"), Arizona Revised Statutes ("A.R.S.") section 23-1501(A)(3)(c) (2018).[2]  Accordingly, we reverse the judgment.

**FACTS AND PROCEDURAL BACKGROUND**

¶2          The Surprise Police Department hired Alicia Peterson as a patrol officer in April 2005 and later promoted her to detective.  At the time, Peterson served in the United States Marine Corps Reserve.  In June 2010, the department announced testing for a vacant sergeant position.  Because Peterson was away on military reserve duty, she did not receive the announcement until after the application deadline had passed.  The department allowed her to test for the position even though she had missed the deadline to apply.

¶3          After testing, Peterson advanced to the next phase of the promotion process, and later that summer, she was ranked first among the candidates.  On August 17, however, Peterson gave notice she intended to resign.  At a meeting with the interim chief of police, Peterson repeated earlier complaints she had raised with her supervisor that other members of the department had repeatedly and persistently harassed her during the promotion process.  Peterson resigned effective September 1.  Citing "a negative environment" that had caused Peterson to feel "ridiculed . . . undermined and . . . subjected to personal attack by fellow members" of the

---

[2]     Absent material revision after the relevant date, we cite a statute's current version.

department, the interim chief closed the promotion process without filling the position.

¶4        A year later, Peterson sued the City, alleging constructive discharge and breach of contract. Peterson asserted she was compelled to resign because the City failed to protect her from intolerable discriminatory conduct based on her gender and military status. She also asserted the City breached an implied-in-fact contract by failing to comply with its employee manual.

¶5        After discovery, the City moved for summary judgment. The City did not dispute that the harassment Peterson alleged had occurred, but argued it was not so bad that it amounted to constructive discharge. The City argued that to the extent Peterson's wrongful-termination claim was based on her gender, it was barred by her failure to exhaust administrative remedies under the Arizona Civil Rights Act, A.R.S. §§ 41-1401 to -1493.04 (2018). The City also denied it had any employment contract with Peterson.

¶6        In response, Peterson argued that exhaustion of administrative remedies is required only for "firsthand" violations of the Arizona Civil Rights Act, and not for a whistleblower's retaliation claim under § 23-1501(A)(3)(c)(ii). She also argued there was a question of fact about whether the City's manual or policies created an employment contract.

¶7        The court dismissed Peterson's contract claim but denied the motion for summary judgment on her claim for retaliatory constructive discharge. After a four-day trial, the jury found in favor of Peterson and awarded her $375,000 in damages. The court denied the City's request for attorney's fees on the contract claim and later denied the City's motion for judgment as a matter of law or for a new trial.

¶8        The City timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and A.R.S. § 12-2101(A) (2018).

## DISCUSSION

### A.    Constructive Discharge and the EPA.

#### 1.    General principles.

¶9        Arizona law allows an employee to claim constructive discharge based on an employer's "outrageous conduct" or failure to

remedy "objectively difficult or unpleasant working conditions" that would compel a reasonable employee to resign. A.R.S. § 23-1502(A) (2018). The parties agree, however, that although constructive discharge may transform a resignation into a discharge, by itself, it does not afford an employee a remedy. *Id.* (stating elements of constructive-discharge claim that may be alleged "*[i]n any action under the statutes of this state or under common law*") (emphasis added). To prevail on a claim for constructive discharge, an employee also must prove a common-law or statutory claim for wrongful termination. *See, e.g.*, *City of Fairbanks v. Rice*, 20 P.3d 1097, 1102, n.7 (Alaska 2000) ("Constructive discharge is not an independent cause of action, but merely satisfies the discharge element in a wrongful discharge claim."); *Turner v. Anheuser-Busch, Inc.*, 876 P.2d 1022, 1030 (Cal. 1994) ("Even after establishing *constructive* discharge, an employee must independently prove a breach of contract or tort in connection with employment termination in order to obtain damages for *wrongful* discharge."); *Balmer v. Hawkeye Steel*, 604 N.W.2d 639, 643 (Iowa 2000) ("[C]onstructive discharge is actionable only when an express discharge would be actionable in the same circumstances.").

**¶10**        The EPA limits the potential claims of an employee who has been terminated, whether directly or through constructive discharge. As relevant here, the EPA allows a former employee to sue for a discharge that violates a state statute or that is in retaliation for reporting a violation of the Arizona Constitution or a state statute. A.R.S. § 23-1501(A)(3)(b), (c).[3] Peterson's claim under the EPA was that the City retaliated against her for reporting violations of state statutes that bar discrimination on the basis of gender and military service. We first address the gender discrimination issue, then turn to discrimination based on military service.[4]

## 2.        Reported violation of the Arizona Civil Rights Act.

**¶11**        Peterson offered substantial evidence at trial that she suffered employment discrimination and harassment based on gender. The jury heard that Peterson's coworkers spread rumors that she had lied about why she missed the deadline to apply for the sergeant position, that they

---

[3]        The EPA also allows a terminated employee to sue for breach of contract. *See* A.R.S. § 23-1501(A)(3)(a). Peterson did not cross-appeal from the superior court's entry of summary judgment against her on her claim for breach of contract.

[4]        We review *de novo* legal conclusions and mixed questions of law and fact. *State v. Spencer*, 235 Ariz. 496, 498, ¶ 8 (App. 2014).

ridiculed her as not intelligent enough or otherwise qualified to be a sergeant, publicly asserted she had "f'd up" the entire testing process, and falsely claimed that she received improper assistance on the written test from a female lieutenant who wanted to see another woman advance in the department. According to Peterson, the abuse "blew up" after it became known that she was the top candidate in line for the sergeant's position. She testified her coworkers and some supervisors, including her lieutenant, repeatedly made sexually vulgar, suggestive or otherwise derogatory comments to her based on gender. Many of the comments were made in online posts, some of which were printed out and placed on her desk waiting for her when she came to work. She also testified about an instance in which she needed assistance in the field and called three times for safety backup, but no one responded.

¶12            The City did not seriously dispute Peterson's accounts, but contended the ill will she experienced was not based on gender discrimination and offered evidence that the acting police chief and others in management expressed support for Peterson. Nevertheless, the evidence Peterson presented would have been sufficient to state a claim for discrimination based on sex in violation of the Arizona Civil Rights Act, A.R.S. § 41-1463(B)(1) (2018) (unlawful "to discharge any individual or otherwise to discriminate against any individual with respect to the individual's compensation, terms, conditions or privileges of employment because of the individual's . . . sex"). And the EPA expressly allows a claim by an employee who alleges she has been terminated in violation of the Arizona Civil Rights Act. A.R.S. § 23-1501(A)(3)(b)(i).

¶13            The Arizona Civil Rights Act, however, requires an employee to file a charge with the Arizona Civil Rights Division within 180 days of an alleged violation, A.R.S. § 41-1481(A) (2018), and an employee who does not do so loses her right to sue, *see Onelas v. SCOA Indus., Inc.*, 120 Ariz. 547, 548 (App. 1978). It is undisputed that Peterson could not sue under the EPA for termination in violation of the Arizona Civil Rights Act because she did not timely file a charge with the Civil Rights Division.

¶14            For that reason, Peterson crafted her claim against the City to allege not constructive discharge caused by "firsthand" discrimination, but constructive discharge caused by illegal retaliation under the EPA, A.R.S. § 23-1501(A)(3)(c). That subsection of the EPA allows an employee to sue when

> [t]he employer has terminated the employment relationship
> of an employee in retaliation for . . . :

\*      \*      \*

(ii) The disclosure by the employee in a reasonable manner that the employee has information or a reasonable belief that the employer, or an employee of the employer, has violated [or] is violating . . . the statutes of this state . . . .

¶15       Thus, Peterson's claim was that under § 23-1501(A)(3)(c)(ii), she told her supervisors that her coworkers were violating the Arizona Civil Rights Act's ban on gender discrimination, but the City did nothing to end the harassment, allowing it to continue unabated, finally causing the constructive discharge.  Peterson testified she reported the sexual harassment to the human relations department and to her supervisors, who she said failed to remedy the situation and only encouraged her to ignore the disparaging comments and "keep moving forward."  Peterson acknowledged that the acting chief of police urged her not to resign, but testified she quit because "no one did anything" to address the continued harassment.

¶16       Viewed closely, Peterson's claim that she was constructively discharged *in retaliation for reporting a violation* of the Arizona Civil Rights Act is indistinguishable from a claim that she was constructively discharged *in violation* of the Arizona Civil Rights Act.  Both claims are premised on the same violation — illegal sex discrimination in connection with employment.  *See* A.R.S. § 41-1463(B)(1).  An employee may claim constructive discharge based on sex discrimination if the employee puts the employer on 15 days' notice that the employee intends to resign because of "objectively difficult or unpleasant working conditions to the extent that a reasonable employee would feel compelled to resign . . . because of these conditions and the employer fails to respond to the employee's concerns."  A.R.S. §§ 23-1502(A)(1) (constructive discharge); 41-1463(B)(1) (discrimination based on sex).  Peterson's "whistleblower" retaliation claim required proof of those same facts — she alleged that, after she put the City on notice that her coworkers were sexually harassing her in violation of the Arizona Civil Rights Act, the City constructively discharged her by failing to stop the harassment, allowing the intolerable working conditions to continue.  *See* A.R.S. § 23-1501(A)(3)(c)(ii) (termination in retaliation for reporting a violation of law).[5]

_____

[5]       A constructive-discharge claim does not require an employee to give notice and allow the employer an opportunity to cure when there is

¶17        Peterson's admitted failure to exhaust her administrative remedies prevented her from bringing the former claim — constructive discharge based on sex discrimination under A.R.S. § 41-1463(B)(1). Her claim for retaliatory constructive discharge fails for the same reason. The EPA strictly limits the claims available to an employee alleging wrongful termination. The statute allows suit by an employee who is terminated "in violation of a statute," specifically including a violation of the Arizona Civil Rights Act. A.R.S. § 23-1501(A)(3)(b). But under the EPA, "if [such a] statute provides a remedy to an employee for a violation of the statute, the remedies provided to an employee for a violation of the statute are the exclusive remedies for the violation of the statute." *Id.* Because Peterson forfeited her exclusive remedy for sex discrimination under the Arizona Civil Rights Act by failing to file an administrative charge, the EPA does not permit her to refashion her discrimination claim into a retaliation claim under § 23-1501(A)(3)(c)(ii).

¶18        The evidence at trial showed repeated abusive acts and comments that Peterson's coworkers — each of them a sworn officer of the law — made against her throughout the sergeant promotion process. What happened to Peterson belongs in no workplace, let alone a public workplace whose purpose is law enforcement. The Arizona Civil Rights Act grants a remedy to a victim of workplace discrimination based on sex. Unfortunately, however, for reasons our record does not disclose, Peterson did not file a timely administrative charge, and that omission prevented her from seeking relief under the Arizona Civil Rights Act. When an employee complains of sex discrimination and the employer allegedly retaliates by failing to remedy the discriminatory conduct, we cannot treat the employee's resulting constructive-discharge claim differently than a constructive-discharge claim based on the underlying discrimination under A.R.S. § 23-1502(A)(1). *See Bodett v. CoxCom, Inc.*, 366 F.3d 736, 746 (9th Cir. 2004) (employee waived claim for retaliation under what is now § 23-1501(A)(3)(c) by failing to exhaust administrative remedies under Arizona Civil Rights Act); *Taylor v. Graham County Chamber of Commerce*, 201 Ariz. 184, 188, ¶ 12 (App. 2001) ("The EPA does not provide a back door method

_____

evidence of "outrageous conduct . . . including sexual assault, threats of violence directed at the employee, [or] a continuous pattern of discriminatory harassment." *See* A.R.S. § 23-1502(A)(2). Because Peterson alleged she was constructively discharged *in retaliation for reporting the harassment*, she could not proceed under § 23-1502(A)(2), but was required as a factual matter to show she gave notice and that the City failed to respond, causing her constructive discharge.

of suing . . . in tort for wrongful termination in violation of [the Arizona Civil Rights Act] or its public policy.").

¶19 Accordingly, because Peterson failed to exhaust her administrative remedies as required to maintain a suit under the Arizona Civil Rights Act, the City was entitled to judgment as a matter of law on Peterson's retaliatory constructive discharge claim under the EPA.

### 3. Reported violation of statutes pertaining to military service.

¶20 Peterson also alleged a retaliation claim under the EPA based on her contention that coworkers were harassing her in violation of state statutes barring discrimination against service members. She argues the conduct she reported to her superiors constituted violations of A.R.S. §§ 26-167(A) (2018) and -168(B) (2018), which she argues together "provide protection for members of the National Guard and military reservists from employment discrimination."

¶21 Under § 26-167(A), "[a] member of the national guard shall not, because of membership therein or absence from employment under competent military orders, be deprived of employment or prevented or obstructed in obtaining employment in his trade, occupation or profession." During her employment with the City, Peterson served in the United States Marine Corps Reserve; she does not claim she was a member of the National Guard during any time relevant to her claim. Therefore, § 26-167(A) is inapplicable.

¶22 Although § 26-168(B) applies to military reservists such as Peterson, the statute does not protect against the type of harm Peterson alleged. In relevant part, § 26-168(B) states:

> A member of . . . the United States armed forces reserves shall not lose seniority or precedence while absent under competent military orders. On return to employment the employee shall be returned to the employee's previous position, or to a higher position commensurate with the employee's ability and experience as seniority or precedence would ordinarily entitle the employee.

¶23 Peterson offered no evidence that she was deprived of any seniority or "precedence" due to her military orders in violation of § 26-168(B). Indeed, she testified coworkers complained that she was allowed to participate in the promotion process even though she missed the application deadline because she was on reserve duty. One coworker filed

a formal complaint to that effect. The police department allowed Peterson to test, despite the coworkers' complaints, because it accepted her reason for missing the deadline — she was away on military service.

¶24 Further, Peterson cites no evidence that she reported any violation of § 26-168(B) to her superiors. And no evidence supports her contention on appeal that the City retaliated against her in violation of the EPA by failing to remedy any such violation.[6]

**B.       Attorney's Fees.**

¶25 The City also argues the superior court abused its discretion when it denied the City's request for $227,261 in attorney's fees pursuant to A.R.S. § 12-341.01(A) (2018) based on its dismissal of Peterson's claim for breach of contract. We review an attorney's fee order under A.R.S. § 12-341.01(A) for an abuse of discretion, *see State Farm Mut. Auto. Ins. Co. v. Arrington*, 192 Ariz. 255, 261, ¶ 27 (App. 1998), and may affirm such a decision if it has any reasonable basis, *Tucson Estates Prop. Owners Ass'n v. McGovern*, 239 Ariz. 52, 57, ¶ 12 (App. 2016).

¶26 Under A.R.S. § 12-341.01(A), "[i]n any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney fees." In denying the City's request for fees, the court found that Peterson's action "sounded primarily in tort, not contract; and that in any event Plaintiffs were the successful party in the litigation." Although Peterson is no longer the successful party, the court did not abuse its discretion by concluding that her contract claim was incidental to her statutory wrongful-discharge claim. *See West v. Salt River Agri. Imp. & Power Dist.*, 179 Ariz. 619, 626 (App. 1994).

---

[6] On appeal, Peterson argues she gave notice that coworkers were harassing her in violation of criminal statutes, including those forbidding endangerment, threatening or intimidating, assault and refusing to aid a peace officer. We will not address this argument because she did not raise it at trial (with the exception of her claim that the City retaliated against her for reporting criminal harassment, which the superior court barred as untimely, a ruling Peterson did not cross-appeal). *See Hannosh v. Segal*, 235 Ariz. 108, 115, ¶ 25 (App. 2014) ("[W]e generally will not consider arguments that were not presented to the trial court for the first time on appeal.").

## CONCLUSION

**¶27** For the reasons stated, we reverse the judgment and award of damages on Peterson's wrongful-termination claim, but affirm the superior court's denial of the City's request for attorney's fees pursuant to § 12-341.01(A).



AMY M. WOOD • Clerk of the Court
FILED: AA